FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 27, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NOE C.,[1] <br><br>             Plaintiff, <br><br>   vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>           Defendant. | No. 1:19-cv-03239-RMP <br><br> REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 10, 14 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 10, 14. This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 16. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

REPORT AND RECOMMENDATION - 1

the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion, ECF No. 10, be denied and Defendant's Motion, ECF No. 14, be granted.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

REPORT AND RECOMMENDATION - 2

1  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7  *Sanders*, 556 U.S. 396, 409-10 (2009).

8  **FIVE-STEP EVALUATION PROCESS**

9  A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do his previous work[,] but cannot,

16  considering his age, education, and work experience, engage in any other kind of

17  substantial gainful work which exists in the national economy."  42 U.S.C. §

18  1382c(a)(3)(B).

19  The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

REPORT AND RECOMMENDATION - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

REPORT AND RECOMMENDATION - 4

1  the claimant's "residual functional capacity." Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5      At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

8  capable of performing past relevant work, the Commissioner must find that the

9  claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

10 performing such work, the analysis proceeds to step five.

11     At step five, the Commissioner considers whether, in view of the claimant's

12 RFC, the claimant is capable of performing other work in the national economy.

13 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

14 must also consider vocational factors such as the claimant's age, education and

15 past work experience. *Id.* If the claimant is capable of adjusting to other work, the

16 Commissioner must find that the claimant is not disabled. 20 C.F.R. §

17 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis

18 concludes with a finding that the claimant is disabled and is therefore entitled to

19 benefits. *Id.*

20

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 1, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of October 31, 2015. Tr. 78, 249-54. The application was denied initially, and on reconsideration. Tr. 107-19; Tr. 123-29. Plaintiff appeared before an administrative law judge (ALJ) on October 27, 2017, and a supplementary hearing was held July 2, 2018. Tr. 31-43, 44-77. On October 2, 2018, the ALJ denied Plaintiff's claim. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff engaged in substantial gainful activity from October 2016 through January 2017, and found the work activity was not an unsuccessful work attempt. Tr. 16. The ALJ found there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity and as such continued with the five-step evaluation to address periods during which Plaintiff did not engage in substantial gainful activity. *Id.* At step two, the ALJ found that Plaintiff has the following

REPORT AND RECOMMENDATION - 6

severe impairments: antisocial personality disorder, unspecified anxiety disorder, major depressive disorder, unspecified neurocognitive disorder, and alcohol and methamphetamine use disorder.[2]  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform the full range of work at all exertional levels with the following nonexertional limitations:

> [H]e is able to understand, remember, and carry out simple, routine, and repetitive tasks; he is able to work where there is no contact with the general public; work must have no tandem tasks or tasks involving a cooperative team effort; and he is able to have occasional, brief, and superficial contact with coworkers.

Tr. 19.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 23-24.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there

---

[2] Plaintiff notes the ALJ rejected medical opinions that found Plaintiff had severe physical impairments, but Plaintiff does not present any arguments on this issue and concedes any error in the rejection of the physical limitations is harmless. ECF No. 10 at 6.

REPORT AND RECOMMENDATION - 7

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as production assembler, hand packager, and garment folder.

Tr. 24-25.  Therefore, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from the date of the application though the date

of the decision.  Tr. 25.

On August 21, 2019, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-one analysis;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 10 at 2.

REPORT AND RECOMMENDATION - 8

# DISCUSSION

## A. Step One

Plaintiff contends the ALJ erred at step by one by concluding that Plaintiff's work at Matson Fruit was substantial gainful activity as opposed to an unsuccessful work attempt.  ECF No. 10 at 3-5.

At step one of the sequential evaluation process, the ALJ considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the ALJ must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).  Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full-or part-time basis, and "is the kind of work usually done for pay or profit."  20 C.F.R. § 416.972.  In some instances, short-term work may be considered an unsuccessful work attempt (UWA) instead of substantial gainful activity.  *See Gatliff v. Comm'r Soc. Sec. Admin*., 172 F.3d 690, 694 (9th Cir. 1999).  The concept was designed as an equitable means of disregarding work that does not demonstrate sustained substantial gainful employment.  *Id*.; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

1       A UWA is defined by regulation as "work that [the claimant is] forced to

2   stop or to reduce below the substantial gainful activity level after a short time

3   because of [his] impairment."  20 C.F.R. § 416.974(a)(1); *see also* Social Security

4   Ruling (SSR) 84–25.  The three main requirements to qualify for the UWA

5   exclusion are: (1) the claimant must have a significant break in the continuity of

6   his or her work before the work attempt; (2) the work must end or be reduced

7   below the substantial gainful activity earnings level within 6 months because of the

8   impairment or because of the removal of special conditions which took into

9   account the impairment; and (3) for work that lasts between three and six months,

10  the claimant satisfies one of the following criteria: (i) frequent absences from work

11  because of the impairment; (ii) unsatisfactory work because of the impairment; (iii)

12  the claimant worked during a period of temporary remission of the impairment; or

13  (iv) the claimant was working under special conditions that were essential to the

14  claimant's performance and these conditions were removed.  20 C.F.R. §

15  416.974(c), SSR 84-25.[3]

16  _____

17  [3] 20 C.F.R. 416.974(c) was revised November 16, 2016 to remove the additional

18  criteria for unsuccessful work attempts that lasted three to six months, and SSR 05-

19  02 was rescinded May 14, 2018, which also addressed the additional criteria for

20  unsuccessful work attempts that lasted three to six months.  However, SSR 84-25

REPORT AND RECOMMENDATION - 10

The ALJ found Plaintiff's work at Matson Fruit Company, from October 2016 through January 2017, was substantial gainful activity and was not an unsuccessful work attempt.  Tr. 16.  Plaintiff has not met his burden in demonstrating the work was an unsuccessful work attempt.  Plaintiff demonstrated there was a break in the continuity of his work, and he argues his work ended because of his impairment as he alleges he stopped working because he felt uncomfortable, ECF No. 10 at 5.  However, Plaintiff does not assert that he had frequent absences due to his impairment, that his work was unsatisfactory due to his impairment, that the work was done during a period of temporary remission, or that the work was performed under special conditions, as required by SSR 84-25.  Plaintiff argues he had difficulty with the job as he testified his depression and anxiety made it hard for him to stay at work, ECF No. 10 at 4-5, but Plaintiff also testified, "I actually liked the job," and stated he got along with the people at the job, Tr. 67, and does not set forth any argument that demonstrate his attendance or work was unsatisfactory due to his impairment.  As such, Plaintiff has not met his burden in demonstrating his work was an unsuccessful work attempt.

_____

has not been revised nor rescinded, and still includes the additional criteria for three to six-month long work attempts.

REPORT AND RECOMMENDATION - 11

1       Further, any error would be harmless as the ALJ proceeded with the analysis

2   for the remainder of the adjudicative period.  Even if the ALJ erred in finding the

3   four month period was substantial gainful activity and not an unsuccessful work

4   attempt, the period would not meet the duration requirement, as the four-month

5   period does not fulfill the twelve-month duration requirement, and the Court finds

6   the ALJ's analysis of the remainder of the adjudicative period is supported by

7   substantial evidence.  *See* 42 U.S.C. § 1382c(a)(3)(A).  While Plaintiff contends

8   the ALJ's error impacted her analysis of the medical opinion evidence, the Court

9   finds the ALJ gave other supported reasons to reject the medical opinions for the

10  reasons discussed *infra.*  As such, any error at step one would be harmless.  *See*

11  *Molina,* 674 F.3d at 1115.  Plaintiff is not entitled to remand on these grounds.

12  **B. Medical Opinion Evidence**

13      Plaintiff contends the ALJ improperly evaluated the opinions of Morgan

14  Liddell, M.D.; Melissa Belding, LMHC; Dan Donahue, Ph.D.; and Diane Fligstein,

15  Ph.D.  ECF No. 10 at 5-14.

16      There are three types of physicians: "(1) those who treat the claimant

17  (treating physicians); (2) those who examine but do not treat the claimant

18  (examining physicians); and (3) those who neither examine nor treat the claimant

19  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

20  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

REPORT AND RECOMMENDATION - 12

1   Generally, a treating physician's opinion carries more weight than an examining

2   physician's, and an examining physician's opinion carries more weight than a

3   reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

4   to opinions that are explained than to those that are not, and to the opinions of

5   specialists concerning matters relating to their specialty over that of

6   nonspecialists." *Id.* (citations omitted).

7          If a treating or examining physician's opinion is uncontradicted, the ALJ

8   may reject it only by offering "clear and convincing reasons that are supported by

9   substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

10  "However, the ALJ need not accept the opinion of any physician, including a

11  treating physician, if that opinion is brief, conclusory and inadequately supported

12  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

13  (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

14  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

15  may only reject it by providing specific and legitimate reasons that are supported

16  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

17  F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may

18  serve as substantial evidence if it is supported by other independent evidence in the

19  record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

20

2

REPORT AND RECOMMENDATION - 13

1   "Only physicians and certain other qualified specialists are considered

2   '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

3   2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[4]  However, an ALJ

4   is required to consider evidence from non-acceptable medical sources, such as

5   therapists.  20 C.F.R. § 416.913(d) (2013).[5]  An ALJ may reject the opinion of a

6   non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,

7   763 F.3d at 1161.

8       *1. Dr. Liddell*

9       On February 21, 2016, Dr. Liddell, a consultative examiner, performed a

10  psychological examination and rendered an opinion on Plaintiff's functioning.  Tr.

11  401-07.  Dr. Liddell diagnosed Plaintiff with antisocial personality disorder;

12  unspecified anxiety disorder; major depressive disorder; unspecified

13  neurocognitive disorder, Borderline IQ versus neurocognitive disorder secondary

---

15  [4] The regulation that defines acceptable medical sources is found at 20 C.F.R. §

16  416.902 for claims filed after March 27, 2017.  The Court applies the regulation in

17  effect at the time the claim was filed.

18  [5] The regulation that requires an ALJ's consider opinions from non-acceptable

19  medical sources is found at 20 C.F.R. § 416.920c for claims filed after March 27,

20  2017.  The Court applies the regulation in effect at the time the claim was filed.

REPORT AND RECOMMENDATION - 14

to significant substance use, compounded by limited education; and alcohol and methamphetamine use disorder with unknown status.  Tr. 406.  Dr. Liddell opined Plaintiff has poor judgment and insight; he is able to perform simple and repetitive as well as detailed and complex tasks; he is able to accept instructions from supervisors and interact with coworkers and the public; he is able to perform work activities on a consistent basis, maintain regular work attendance, complete a normal workday/workweek, and manage the usual stress encountered in the workplace; and he had significant behavior problems which may interfere with his ability to interact with coworkers, the public, or supervisors, or to do his work reliably and dependably, but he noted Plaintiff interacted well with him and his secretary.  Tr. 406-07.  The ALJ gave Dr. Liddell's opinion partial weight.  Tr. 23. As Dr. Liddell's opinion is contradicted by the opinions of Dr. Donahue, Tr. 87-88, and Dr. Fligstein, Tr. 100-02, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Liddell's opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Liddell's opinion was equivocal.  Tr. 23.  An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."  *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999).  The ALJ noted that Dr. Liddell opined that Plaintiff's behavioral issues "may" interfere with his

REPORT AND RECOMMENDATION - 15

1  ability to interact with others and work, and the inclusion of the term "may" caused

2  the opinion to be equivocal and indicates the opinion does not reflect the most that

3  Plaintiff could do. Tr. 23. While Plaintiff argues the opinion was a definitive

4  statement, and equates the term "may" to the phrase "would probably," ECF No.

5  10 at 8-9, the ALJ reasonably found that the inclusion of the term "may" caused

6  the opinion to be equivocal. Dr. Liddell stated Plaintiff "had significant behavioral

7  problems which may interfere with his ability to interact with coworkers, the

8  public, or supervisors or do his work reliably and dependably; however, he

9  interacted well with me, my secretary, etc." Tr. 407. Dr. Liddell also opined

10 Plaintiff is able to accept instructions from supervisors and interact with coworkers

11 and the public, and he can perform work activities on a consistent basis and

12 complete a normal workday/workweek. Tr. 406-07. When considering his

13 opinion as a whole, the ALJ's finding that Dr. Liddell's opinion is equivocal is

14 supported by substantial evidence.

15      Second, the ALJ found Dr. Liddell's opinion was inconsistent with his own

16 examination notes. Tr. 23. A medical opinion may be rejected if it is unsupported

17 by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec.*

18 *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947,

19 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

20 *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, a

1   physician's opinion may be rejected if it is unsupported by the physician's

2   treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). The ALJ

3   found Dr. Liddell's observations of and interactions with Plaintiff were more

4   consistent with the ALJ's finding of non-disability than with Dr. Liddell's opinion

5   that Plaintiff may have significant behavioral problems. Tr. 23. Dr. Liddell noted

6   Plaintiff interacted well with him and his secretary. Tr. 407. Plaintiff argues the

7   opinion is consistent with the examination as the examination includes

8   observations Plaintiff had intense eye contact, was difficult to interrupt, selectively

9   disclosed information, and had poor articulation. ECF No. 10 at 8 (citing Tr. 404).

10  However, the examination noted Plaintiff had a normal appearance, normal

11  psychomotor activity and movement, he "sometimes" had intense eye contact, he

12  had normal rate, spontaneity, prosody, and volume to his speech and normal

13  thoughts, and he was appropriate, calm, and pleasant throughout the interview. Tr.

14  404-05. The ALJ's finding that Dr. Liddell's examination findings are inconsistent

15  with disabling limitations due to Plaintiff's behavior is supported by substantial

16  evidence.

17        Third, the ALJ found Dr. Liddell's opinion was based on Plaintiff's

18  unreliable self-report rather than his own direct observations. Tr. 23. A

19  physician's opinion may also be rejected if it is too heavily based on a claimant's

20  properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. Dr. Liddell noted

REPORT AND RECOMMENDATION - 17

1  that Plaintiff interacted well with him and his secretary, yet opined Plaintiff had

2  significant behavioral problems which may interfere with his ability to interact

3  with others or work reliably.  Tr. 407.  Plaintiff argues the opinion is not based on

4  self-report because Dr. Liddell reviewed some of his treatment records, noted some

5  abnormalities on examination, and Plaintiff did not report difficulties with

6  coworkers or supervisors, ECF No. 10 at 7.  However, Plaintiff reported a history

7  of difficulties with girlfriends, worries about members of the gang he previously

8  belonged to, significant legal problems with numerous arrests, incarcerations, and

9  court-mandated rehabilitation treatment, and he reported significant relationship

10  problems and impaired social functioning due to his substance use.  Tr. 402-04.  As

11  discussed *supra,* while Plaintiff points to notes of abnormalities such as Plaintiff

12  sometimes having intense eye contact, Dr. Liddell generally noted normal

13  behavior.  Tr. 404-05.  As the ALJ properly rejected Plaintiff's symptom claims for

14  the reasons discussed *infra,* the ALJ's finding that Dr. Liddell's opinion was based

15  on Plaintiff's unreliable self-report rather than his own observations is supported

16  by substantial evidence.

17      Lastly, the ALJ found Dr. Liddell's opinion was inconsistent with the record

18  as a whole, including Plaintiff's work history, activities of daily living, and mental

19  examination findings.  Tr. 23.  An ALJ may discredit physicians' opinions that are

20  unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  The ALJ noted

REPORT AND RECOMMENDATION - 18

Plaintiff's ability to engage in work in 2016 and 2017, and his ability to socialize with multiple friends and his ex-girlfriend, was inconsistent with Dr. Liddell's opinion regarding behavioral problems.  Tr. 22-23.  The ALJ also noted that multiple mental status examinations showed Plaintiff was oriented, with normal thoughts, speech, behavior, concentration, and attention.  Tr. 22 (citing Tr. 443, 456, 471, 480, 569).  While Plaintiff offers an alternative view of the evidence, ECF No. 10 at 8-10, the ALJ's finding that Dr. Liddell's opinion was inconsistent with the record as a whole is supported by substantial evidence.

### 2.  Ms. Belding

On June 7, 2016, Ms. Belding, a treating counselor, provided an opinion on Plaintiff's functioning.  Tr. 433-35.  Ms. Belding diagnosed Plaintiff with post-traumatic stress disorder (PTSD).  Tr. 433.  Ms. Belding opined Plaintiff experiences environmental triggers that result in potentially violent angry outbursts, panic attacks, and overwhelming anxiety, and he typically isolates to avoid being triggered; he should be limited to participating one to ten hours per week in activities related to working, looking for work, or preparing for work; and his limitations are likely to last six to 12 months depending on whether he is willing to engage in therapy.  Tr. 433-34.  The ALJ gave Ms. Belding's statement little weight.  Tr. 23.  As Ms. Belding is not an acceptable medical source, the ALJ

REPORT AND RECOMMENDATION - 19

1  was required to give germane reasons to reject Ms. Belding's opinion.  *See*

2  *Ghanim*, 763 F.3d at 1161.

3         First, the ALJ found the opinion did not meet the duration requirement.  Tr.

4  23.  Temporary limitations are not enough to meet the durational requirement for a

5  finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to

6  be expected to last for a continuous period of not less than twelve months); 42

7  U.S.C. § 423(d)(1)(A) (same); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d

8  1155,1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians'

9  short-term excuse from work was not indicative of "claimant's long-term

10 functioning").  Ms. Belding opined Plaintiff's limitations may last six to 12

11 months.  Tr. 434.  As Ms. Belding opined the limitations may last up to 12 months,

12 this satisfies the durational requirement.  However, any error in rejecting the

13 opinion for not meeting the duration requirement is harmless as the ALJ gave other

14 germane reasons to reject the opinion.  *See Molina,* 674 F.3d at 1115.

15        Second, the ALJ found Ms. Belding's opinion was inconsistent with the

16 medical records.  Tr. 23.  A medical opinion may be rejected if it is unsupported by

17 medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278

18 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney,* 981 F.2d at 1019.  An ALJ

19 may discredit physicians' opinions that are unsupported by the record as a whole.

20 *Batson*, 359 F.3d at 1195.  Moreover, an ALJ is not obliged to credit medical

REPORT AND RECOMMENDATION - 20

1    opinions that are unsupported by the medical source's own data and/or

2    contradicted by the opinions of other examining medical sources.  *Tommasetti v.*

3    *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ found there is little support

4    in the treatment records for Ms. Belding's opinion, particularly when considering

5    she stopped treating Plaintiff.  Tr. 23.  While Plaintiff points to evidence of

6    abnormalities, including anxiety, constricted affect, and depression, ECF No. 10 at

7    11-12, the ALJ pointed to multiple generally normal examinations, Tr. 22 (citing

8    Tr. 443, 456, 471, 480, 569).  Plaintiff was observed as being alert, oriented, and

9    cooperative, having normal psychomotor activity and speech, and generally normal

10   memory, attention, concentration, and thoughts. Tr. 443, 456, 471, 479-80, 569.

11   This was a germane reason to reject Ms. Belding's opinion.

12        Third, the ALJ found Ms. Belding's opinion was entitled to less weight

13   because she is not an acceptable medical source.  Tr. 23.  The ALJ is required to

14   consider evidence from non-acceptable medical sources.  20 C.F.R. § 416.927

15   (2012).  Although an individual's status as a medically acceptable source may

16   impact the amount of deference the ALJ gives to an opinion, the ALJ may not

17   reject an opinion as to a claimant's limitations because the opinion comes from a

18   non-acceptable medical source.  *Id.*  The ALJ considered Ms. Belding's opinion,

19   and found it was entitled to less weight in part because she is not an acceptable

20   medical source, particularly when compared to the opinions of Dr. Donahue and

REPORT AND RECOMMENDATION - 21

1   Dr. Fligstein, who are acceptable sources, along with the other reasons discussed

2   herein.  Tr. 23.  As the ALJ gave other reasons to reject the opinion, this was a

3   germane reason to reject Ms. Belding's opinion.

4         Lastly, the ALJ found Ms. Belding's opinion was inconsistent with

5   Plaintiff's ability to work after Ms. Belding rendered her opinion.  Tr. 23.  "The

6   ALJ may reject a medical opinion that is inconsistent with the claimant's work

7   activity."  *Schultz v. Berryhill*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at *4

8   (D. Or. Apr. 21, 2017) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

9   685, 692-93 (9th Cir. 2009)).  Working with an impairment supports a conclusion

10  that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258

11  (9th Cir. 1992).  Ms. Belding rendered her opinion in May 2016, after which

12  Plaintiff engaged in substantial gainful activity from October 2016 through January

13  2017.  Tr. 16, 23.  Although Plaintiff argues his work is not inconsistent with Ms.

14  Belding's opinion as it should be considered an unsuccessful work attempt, the

15  ALJ reasonably found Plaintiff's ability to engage in substantial gainful activity for

16  several months is inconsistent with Ms. Belding's opinion.  This was a germane

17  reason to reject Ms. Belding's opinion.

18        *3.  State Agency Consultants*

19        Dr. Donahue and Dr. Fligstein, State agency psychological consultants,

20  opined Plaintiff has moderate limitations in his ability to: maintain attention and

REPORT AND RECOMMENDATION - 22

concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers/peers without distracting them or exhibiting behavioral extremes; and complete a normal workday/workweek without interruptions from symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods as his attention/concentration may be disrupted by symptoms. Tr. 87-88, 100-01. They further opined Plaintiff would do best "away" from coworkers and the general public. Tr. 88, 101. Dr. Donahue and Dr. Fligstein otherwise opined Plaintiff has no significant limitations in other areas of functioning, and these opinions resulted in findings of non-disability. Tr. 87-89, 100-03. The ALJ gave Dr. Donahue and Dr. Fligstein's opinions partial weight. Tr. 23. As they are non-examining sources, the ALJ must consider the opinions and whether they are consistent with other independent evidence in the record. *See* 20 C.F.R. § 416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

The ALJ found Dr. Donahue and Dr. Fligstein's opinions are less restrictive than the ALJ's RFC. Tr. 23. The ALJ noted her RFC is more consistent with Plaintiff's education, work history, activities, and mental status examinations. *Id.* The RFC includes additional limitations not included in Dr. Donahue and Dr. Fligstein's opinions such as no tandem tasks or tasks involving cooperative team

1   effort.  Tr. 19.  Plaintiff argues the ALJ erred in not addressing Dr. Donahue and

2   Dr. Fligstein's opinion that Plaintiff has moderate limitations in his ability to

3   complete a normal workday/workweek and to maintain attention/concentration for

4   extended periods, and their opinion Plaintiff's attention/concentration may be

5   disrupted by his symptoms.  ECF No. 10 at 13.  Plaintiff contends the opinions are

6   disabling, because even a moderate limitation in maintaining attention or

7   completing a normal workday/workweek should be construed as disabling.  *Id.*

8          Plaintiff's argument that Dr. Donahue and Dr. Fligstein's opinions are

9   disabling is inconsistent with the evidence, as their opinions both resulted in

10   findings of non-disability.  Tr. 89, 103.  Further, the ALJ incorporated Dr.

11   Donahue and Dr. Fligstein's opinions regarding Plaintiff's moderate limitations

12   into the RFC by limiting Plaintiff to simple, routine, and repetitive tasks.  Tr. 19;

13   *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).  The ALJ

14   reasonably interpreted and incorporated Dr. Donahue and Dr. Fligstein's opinions

15   into the RFC.  Plaintiff is not entitled to remand on these grounds.

16   **C. Plaintiff's Symptom Claims**

17          Plaintiff faults the ALJ for discrediting his symptom claims.  ECF No. 10 at

18   14-19.  An ALJ engages in a two-step analysis to determine whether to discount a

19   claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL

20   1119029, at *2.  "First, the ALJ must determine whether there is objective medical

REPORT AND RECOMMENDATION - 24

1  evidence of an underlying impairment which could reasonably be expected to

2  produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation

3  marks omitted).  "The claimant is not required to show that [the claimant's]

4  impairment could reasonably be expected to cause the severity of the symptom [the

5  claimant] has alleged; [the claimant] need only show that it could reasonably have

6  caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

7  Cir. 2009).

8         Second, "[i]f the claimant meets the first test and there is no evidence of

9  malingering, the ALJ can only reject the claimant's testimony about the severity of

10  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

11  rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

12  insufficient; rather, the ALJ must identify what symptom claims are being

13  discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

14  F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

15  why it discounted claimant's symptom claims)).  "The clear and convincing

16  [evidence] standard is the most demanding required in Social Security cases."

17  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

18  *of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

19         Factors to be considered in evaluating the intensity, persistence, and limiting

20  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

REPORT AND RECOMMENDATION - 25

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

     The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 20.

     *1. Inconsistent Statements*

     The ALJ found Plaintiff made inconsistent statements about his symptoms,

limitations, treatment, and substance abuse.  Tr. 20-21.  In evaluating a claimant's

symptom claims, an ALJ may consider the consistency of an individual's own

statements made in connection with the disability-review process with any other

existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

First, the ALJ found Plaintiff made inconsistent statements about his ability to interact with others. Tr. 20. While Plaintiff allegations disabling social limitations and he testified he has no friends, he also testified he sees friends weekly, and the medical records reference Plaintiff reporting social activities on multiple occasions. Tr. 20-21 (citing Tr. 455, 470). Second, the ALJ noted Plaintiff made inconsistent statements about his substance abuse. Tr. 21. While Plaintiff testified he drank alcohol sometimes and smoked marijuana once per week, the medical records contain reports of Plaintiff drinking alcohol regularly and using marijuana daily. Tr. 21 (citing Tr. 455, 470, 566, 568).

Next, the ALJ found Plaintiff made inconsistent statements about treatment. Tr. 21. Plaintiff testified he stopped going to counseling because he could not get a ride to his counseling appointments or he forgot his appointments, but he also testified his sister gave him rides and that he took the bus when needed. *Id.* The counseling records indicate Plaintiff's provider made several attempts to reach him, but he did not respond to calls or letters, and hung up when his provider reached him by phone, resulting in his discharge from counseling. *Id.* (citing Tr.

560-63).  Lastly, the ALJ found Plaintiff gave inconsistent statements about his

symptoms and limitations.  Tr. 21.  Plaintiff testified he has significant anxiety and

depression, and reported impaired concentration, but he denied anxiety, depression,

and difficulty concentrating to his provider.  *Id.* (citing Tr. 578).

While Plaintiff argues the ALJ did not point to any actual inconsistencies,

ECF No. 10 at 15-17, Plaintiff offers an alternative interpretation of the evidence.

For example, Plaintiff contends he did not make inconsistent statements about his

marijuana use, as he testified that he used marijuana with a friend once per week

and used it to sleep or when stressed.  ECF No. 10 at 15 (citing Tr. 56).  However,

while Plaintiff testified he "sometimes" used marijuana when stressed and used it

weekly with friends, Tr. 56, his testimony was inconsistent with his reports to

providers that he was using marijuana daily,  Tr. 566, 568.  On this record, the ALJ

reasonably concluded that Plaintiff gave inconsistent statements.  This finding is

supported by substantial evidence and was a clear and convincing reason to

discount Plaintiff's symptoms complaints.

## 2. *Lack of Treatment*

The ALJ found Plaintiff's symptom claims inconsistent with his lack of

follow through with mental health treatment recommendations.  Tr. 21.  An

unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment may be considered when evaluating the claimant's

REPORT AND RECOMMENDATION - 28

1  subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Evidence

2  of a claimant's self-limitation and lack of motivation to seek treatment are

3  appropriate considerations in determining the credibility of a claimant's subjective

4  symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001);

5  *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion)

6  (considering why plaintiff was not seeking treatment).  When there is no evidence

7  suggesting that the failure to seek or participate in treatment is attributable to a

8  mental impairment rather than a personal preference, it is reasonable for the ALJ to

9  conclude that the level or frequency of treatment is inconsistent with the alleged

10  severity of complaints. *Molina*, 674 F.3d at 1113-14.  But when the evidence

11  suggests lack of mental health treatment is partly due to a claimant's mental health

12  condition, it may be inappropriate to consider a claimant's lack of mental health

13  treatment when evaluating the claimant's failure to participate in treatment.

14  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

15       The ALJ found Plaintiff failed to attend multiple counseling appointments,

16  did not respond to attempts by his counselor to reach him, and had a seven-month

17  period when he stopped seeing his medication management provider.  Tr. 21.  The

18  ALJ noted that during the seven-month treatment gap, Plaintiff reported spending

19  time with friends and using substances. *Id.* (citing Tr. 470).  Plaintiff also reported

20  discontinuing his medication.  Tr. 21 (citing Tr. 565).  Plaintiff contends he had

REPORT AND RECOMMENDATION - 29

1   difficulty re-engaging in services due to his insurance, ECF No. 10 at 17, however

2   the medical records indicate Plaintiff was able to attend an initial assessment and

3   begin appointments without reported issue switching his insurance coverage, and

4   Plaintiff did not report any barriers in accessing care at the initial assessment, Tr.

5   417, 420.  Plaintiff contends he had funding issues that interfered with his

6   appointments, and he otherwise saw his counselor "fairly continually" from May

7   2016 onward, and despite a gap in treatment, he re-engaged in services prior to his

8   hearing.  ECF No. 10 at 17.  Plaintiff's funding required a transfer of therapists in

9   September 2016, and the issue was resolved and he was scheduled to see a

10  counselor in October 2016.  Tr. 440.  However, Plaintiff missed appointments with

11  his counselor on multiple occasions and did not see his medication management

12  provider for seven months preceding March 2017, Tr. 470, and Plaintiff offers no

13  explanation for the gap.  Plaintiff contends he stopped taking his medication due to

14  side effects and he had barriers to treatment such as homelessness resulting in

15  missed appointments and not responding to letters, ECF No. 10 at 16-17, however

16  the ALJ reasonably considered Plaintiff's failure to respond to calls and letters

17  when at least a portion of the time Plaintiff was living with his sister, and Plaintiff

18  repeatedly discontinued prescribed medications while continuing to use marijuana,

19  Tr. 566, 568.  On this record, the ALJ reasonably concluded that Plaintiff's lack of

20  mental health treatment was inconsistent with his symptom claims.  This finding is

REPORT AND RECOMMENDATION - 30

1  supported by substantial evidence and was a clear and convincing reason to

2  discount Plaintiff's symptoms complaints.

3      *3.  Objective Medical Evidence*

4      The ALJ found Plaintiff's symptom claims inconsistent with the objective

5  medical evidence.  Tr. 22.  An ALJ may not discredit a claimant's symptom

6  testimony and deny benefits solely because the degree of the symptoms alleged is

7  not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

8  857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

9  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d

10  676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant

11  factor, along with the medical source's information about the claimant's pain or

12  other symptoms, in determining the severity of a claimant's symptoms and their

13  disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

14      The ALJ noted that multiple examinations demonstrated Plaintiff was

15  oriented, with logical thoughts, normal speech, normal thoughts, concentration,

16  and attention, fair memory, and he was goal oriented.  Tr. 22 (citing Tr. 443, 456,

17  471, 480, 569).  Plaintiff contends the medical records are consistent with his

18  allegations and points to abnormalities on some examinations.  ECF No. 10 at 18.

19  However, the ALJ reasonably concluded that Plaintiff's symptom claims were

20  inconsistent with the objective evidence.  This finding is supported by substantial

1  evidence and was a clear and convincing reason, along with the other reasons

2  offered, to discount Plaintiff's symptoms complaints.

3      *4. Activities of Daily Living*

4      The ALJ found Plaintiff's symptom claims inconsistent with his activities of

5  daily living.  Tr. 22.  The ALJ may consider a claimant's activities that undermine

6  reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial

7  part of the day engaged in pursuits involving the performance of exertional or non-

8  exertional functions, the ALJ may find these activities inconsistent with the

9  reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.

10 "While a claimant need not vegetate in a dark room in order to be eligible for

11 benefits, the ALJ may discount a claimant's symptom claims when the claimant

12 reports participation in everyday activities indicating capacities that are

13 transferable to a work setting" or when activities "contradict claims of a totally

14 debilitating impairment." *Molina*, 674 F.3d at 1112-13.

15     The ALJ noted Plaintiff was able to ride the bus, go to parks and restaurants,

16 visit stores multiple times per week, see friends weekly and his ex-girlfriend and

17 daughter on a regular basis.  Tr. 22.  Plaintiff also reported using the computer,

18 playing video games, having no difficulty with driving, household tasks, and

19 managing his own finances.  *Id.*  Plaintiff contends the identified activities do not

20 demonstrate any inconsistencies with Plaintiff's symptom claims.  ECF No. 10 at

REPORT AND RECOMMENDATION - 32

18-19.  However, Plaintiff alleged in his function report that he does not spend anytime with anyone, Tr. 305, while the ALJ pointed to testimony and medical records indicating Plaintiff regularly socializes with others, Tr. 21-22, 56, 455, 470.  On this record, the ALJ reasonably concluded that Plaintiff's activities of daily living are inconsistent with his symptom claims.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.  Plaintiff is not entitled to remand on these grounds.

**D. Step Five**

Plaintiff contends the ALJ erred at step five in relying on the vocational expert's testimony.  ECF No. 10 at 19-21.  Plaintiff argues the vocational expert's testimony contained "implausible job estimates."  ECF No. 10 at 20.  However, "[w]hen a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017).

Plaintiff was represented at his administrative hearing, and did not raise a challenge to the vocational expert's job numbers during the hearing nor to the Appeals Council.  Tr. 76, 244-46.  While Plaintiff now challenges the basis of the vocational expert's testimony, ECF No. 10 at 20, the Plaintiff did not raise the issue of the accuracy of the expert's testimony at any point during the

administrative proceedings.  In *Shaibi,* the Ninth Circuit specifically held that challenges based on an alleged conflict with alternative numbers gleaned from the County Business Patterns or the Occupational Outlook Handbook are waived if not raised at the administrative level.  *Shaibi,* 883 F.3d at 1109.

Here, Plaintiff challenges the vocational expert's testimony by pointing to evidence from the Occupational Employment Statistics, which is located within the Occupational Outlook Handbook.  *See* https://www.bls.gov/ooh/production/quality-control-inspectors.htm#tab-7 (last accessed October 7, 2020).  Plaintiff also relies on data from Job Browser Pro.  ECF No. 10 at 21.  However, Job Browser Pro also utilizes data from the County Business Patterns and Occupational Outlook Handbook.  *See* https://skilltran.com/index.php/products/web-based-services/jbpweb (last accessed October 7, 2020).  As such, Plaintiff has waived any challenge to the vocational expert's job numbers.  *See Shaibi,* 883 F.3d at 1109.

Despite Plaintiff's waiver, the Court has considered Plaintiff's argument and finds the ALJ's step five determination is supported by substantial evidence.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  There is no "bright-line rule

1  for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389.

2  "There are two ways for the Commissioner to meet the burden of showing that

3  there is other work in 'significant numbers' in the national economy that claimant

4  can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-

5  Vocational Guidelines...." *Id*. A vocational expert's testimony constitutes

6  substantial evidence in support of an ALJ's findings. *Thomas*, 278 F.3d at 960.

7  However, the court may "remand a case when the vocational expert's testimony is

8  'fundamentally flawed.'" *Dunn v. Colvin*, No. 13cv1219-MMA, 2014 WL

9  2159275, at *9 (S.D. Cal. May 23, 2014) (citing *Farias v. Colvin*, 519 F. App'x

10  439, 440 (9th Cir. 2013) (granting remand where "a reasonable mind would not

11  accept the VE's testimony")).

12          The vocational expert testified that her testimony was generally consistent

13  with the Dictionary of Occupational Titles, and her remaining testimony was based

14  on her 25 years of experience. Tr. 76. While Plaintiff offers his own interpretation

15  of data from multiple sources, primarily Job Browser Pro, ECF No. 10 at 19-21,

16  courts have consistently rejected such lay assessment of the raw vocational data

17  derived from Job Browser Pro and have found that such evidence does not

18  undermine the reliability of a vocational expert's opinion. *See*, *e.g.*, *Sarah Amanda*

19  *E. v. Saul*, No. 1:18-CV-03173-FVS, 2019 WL 7817086, at *9 (E.D. Wash. Sept.

20  30, 2019) (noting cases that rejected arguments that Job Browser Pro data

undermined vocational expert's testimony); *Ruth Kay A. v. Comm'r of Soc. Sec.*, No. 1:18-CV-3240-TOR, 2019 WL 7817084, at \*7 (E.D. Wash. Sept. 3, 2019) (offer of data derived from Job Browser Pro does not undermine the vocational expert's testimony); *Colbert v. Berryhill*, 2018 WL 1187549, at \*5 (C.D. Cal. Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. § 416.966(d), and the data therefore served only to show that evidence can be interpreted in different ways).  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the undersigned concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, be **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, be **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

REPORT AND RECOMMENDATION - 36

1

**OBJECTIONS**

2      Any party may object to a magistrate judge's proposed findings,

3   recommendations or report within **fourteen (14)** days following service with a

4   copy thereof.  Such party shall file written objections with the Clerk of the Court

5   and serve objections on all parties, specifically identifying the portions to which

6   objection is being made, and the basis therefor.  Any response to the objection

7   shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

8   directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of

9   service.

10      A district judge will make a *de novo* determination of those portions to

11   which objection is made and may accept, reject or modify the magistrate judge's

12   determination.  The judge need not conduct a new hearing or hear arguments and

13   may consider the magistrate judge's record and make an independent

14   determination thereon.  The judge may, but is not required to, accept or consider

15   additional evidence, or may recommit the matter to the magistrate judge with

16   instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

17   § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern

18   District of Washington.

19      A magistrate judge's recommendation cannot be appealed to a court of

20   appeals; only the district judge's order or judgment can be appealed.

REPORT AND RECOMMENDATION - 37

The District Court Executive is directed to enter this Report and

Recommendation, forward a copy to counsel, and **SET A CASE**

**MANAGEMENT DEADLINE ACCORDINGLY.**

DATED October 27, 2020.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 38